UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE

```
*******************************
                              *
Deborah A. Bellefeuille and   *
Eileen M. Hughes,             *
                              *         COMPLAINT
            Plaintiffs        *         Jury Trial Requested
                              *
v.                            *
                              *
Transformer Service, Inc.     *
                              *
            Defendant         *
                              *
*******************************
```

NOW COME the plaintiffs Deborah A. Bellefeuille and Eileen M. Hughes, by and through their attorneys Douglas, Leonard & Garvey, P.C., and respectfully submit the within Complaint, stating as follows:

**I.     Parties**

1.     The plaintiff Deborah A. Bellefeuille is a former employee of the defendant and resides at 39A Penacook Street, Concord, New Hampshire.

2.     The plaintiff Eileen M. Hughes is a former employee of the defendant and resides at 102 South State Street, Concord, New Hampshire.

3.     The defendant Transformer Service, Inc. is a New Hampshire corporation with a principal place of business at 74 Regional Drive, Concord, New Hampshire.

**II.    Jurisdiction and Venue**

4.     Jurisdiction over the plaintiffs' Title VII claims is proper pursuant to 28 U.S.C. §1331.  The Court may exercise pendent jurisdiction over the plaintiffs' State law claims.

5.     Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because the events and omissions giving rise to the plaintiffs' claims occurred in New Hampshire.

**III.     Facts**

6.     Ms. Bellefeuille began working for the defendant on or about March 4, 2013. When she began employment, the defendant employed her as a Sales Assistant. The defendant promoted Ms. Bellefeuille to the position of Account Manager in or around 2014.

7.     Ms. Bellefeuille was subjected to sexual harassment in her employment by both a manager and a co-employee.

8.     Gregory Booth, a Sales Manager for the defendant, regularly came to Ms. Bellefeuille's desk and pushed his pelvis against her while rubbing her shoulders. Ms. Bellefeuille would freeze or attempt to move away from him.

9.     Sales Manager Booth also asked Ms. Bellefeuille to send him naked pictures of her family and friends from her vacation on at least two separate occasions.

10.    Sales Manager Booth would also say to Ms. Bellefeuille in a creepy whisper, "Deb, I know where you live."

11.    In or around late December of 2016 or early January of 2017, Sales Manager Booth pressed Ms. Bellefeuille to go to lunch or dinner with him. A co-employee told Ms. Bellefeuille that he wanted her to wear a tank top with no bra on the occasion.

12.    Sales Manager Booth also regularly subjected Ms. Bellefeuille to sexual conversations he would have on his phone in his office. He would leave his door open and speak in a booming voice. She would hear him yell out things such as "So, how many blow jobs did she give you this weekend?" and "She has tits like THAT!" Ms. Bellefeuille regularly complained to Assistant Sales Manager Jamie Wiggin[1] about the offensive environment created by Sales Manager Booth's comments, to no avail.

---

[1] Jamie Wiggin is the daughter of Vice President and Chief Financial Officer, David Booth.

13. Sales Manager Booth also specifically discouraged Ms. Bellefeuille from filing a grievance with the company regarding sexual harassment and discrimination in the workplace. In or around late 2015 or early 2016, Ms. Bellefeuille complained to Human Resources Manager Suzanne Arena that there was sex discrimination in the respondent's workplace, that male employees could spend significant blocks of time during the workday engaged in activities unrelated to the defendant's business, but that female employees were under a microscope. Sales Manager Booth, upon learning of Ms. Bellefeuille's complaint, discouraged her from pursuing it, telling her words to the effect, "Nothing's going to come of it, and it will only hurt you in the end." Because Ms. Bellefeuille wanted to keep her job, she directed the Human Resources Manager to destroy her complaint.

14. A co-worker, David Nelson, also subjected Ms. Bellefeuille to virulent sexual harassment. Mr. Nelson sent Ms. Bellefeuille work e-mails containing pictures of male genitalia, sexual videos involving stick figures, and sexual epithets. Additionally, Mr. Nelson sent Ms. Bellefeuille e-mails in Dutch of a sexual nature.

15. Mr. Nelson visited Ms. Bellefeuille's desk repeatedly throughout the workday, without having any legitimate business reason to do so. He would often make reference to sexual matters involving celebrities.

16. On one occasion in or around the summer of 2017, Mr. Nelson made a comment that chilled Ms. Bellefeuille and that she viewed as threatening. Mr. Nelson said words to the effect, "You should close your blinds if you're going to walk around your house like that at night." Sales Manager Booth heard Mr. Nelson and called out, "What was she wearing, Dave, a tank top?" Sales Manager Booth had informed Mr. Nelson in Ms. Bellefeuille's presence where Ms. Bellefeuille lived.

17. On another occasion in or around October of 2017 when Mr. Nelson visited Ms. Bellefeuille's desk, he reached towards Ms. Bellefeuille and made gestures in which he mimed squeezing her breasts. Ms. Bellefeuille screamed in response. Ms. Hughes, sitting nearby, asked what was wrong. Mr. Nelson went to Ms. Hughes' work area and said to her, "All I did was this," as he again mimed the squeezing of breasts with his hands. Ms. Hughes reprimanded him, telling him, "You can't do that! That's sexual harassment!"

18. Soon thereafter, Ms. Bellefeuille reported the incident to Human Resources Manager Arena. Ms. Bellefeuille then met with Ms. Arena and with CEO Stephen Booth. Ms. Bellefeuille reported the breast-squeezing incident, and she further reported that Mr. Nelson was constantly bothering her and that he made her uncomfortable with his frequent and unnecessary visits to her desk.

19. The defendant failed to take any corrective action directed at Mr. Nelson in response to Ms. Bellefeuille's report of his harassing conduct. Although a management meeting occurred after Ms. Bellefeuille reported Mr. Nelson's conduct, the meeting accomplished nothing to remediate the harassment. After that meeting, Mr. Nelson would appear at Ms. Bellefeuille's desk and say, "It's not harassment if they like it, right, Deb?"

20. Mr. Nelson continued to subject Ms. Bellefeuille and other female employees, including the plaintiff Eileen Hughes, to harassment based on sex. On one occasion, he made repeated comments in the presence of the HR Manager on an employee "smoke break" that eating the albumin of eggs was like "eating male sperm." Ms. Hughes became so repulsed that she had to go home. On another occasion, Mr. Nelson commented to Ms. Bellefeuille that the clothes she was wearing made her "boobs look good." Ms. Bellefeuille began wearing

4

unattractive clothes, and clothes that covered her figure to the greatest extent possible, in the hope that such clothing would dissuade Mr. Nelson from making such comments.

21.     Ms. Bellefeuille was not the only female employee who was subjected to harassment based on sex by Mr. Nelson.  Mr. Nelson also loitered without legitimate business reason around Human Resources Manager Arena's desk, flirting with her.  Ms. Arena reported Mr. Nelson's conduct to CEO Booth, but CEO Booth took no appropriate corrective action in response.

22.     Ms. Bellefeuille also suffered retaliation for reporting Mr. Nelson's harassment. Ms. Bellefeuille annually took vacation to the Caribbean.  She had notified the company that she would be taking such a vacation again in March of 2018 and had received assurances from Assistant Sales Manager Wiggin that the company would approve her vacation request.  Ms. Bellefeuille submitted her vacation request on or about January 30, 2018, after making her report of sexual harassment.  The defendant denied Ms. Bellefeuille's request.

23.     In or around February of 2018, Ms. Bellefeuille located sexually harassing e-mails from Mr. Nelson contained in her archive folder.  Ms. Bellefeuille produced these e-mails to Human Resources Manager Arena and to CEO Booth.  Neither CEO Booth nor Human Resources Manager Arena indicated to Ms. Bellefeuille what corrective action, if any, either of them planned to take.  Instead, CEO Booth made a comment to the effect, "I think [Mr. Nelson] has some sort of love interest in you, but he's too old for you."

24.     On or about March 12, 2018, CEO Booth met with Ms. Bellefeuille and asked her to sign a letter wherein CEO Booth wrote, "Dave sent a string of emails that appeared to be bordering on a love interest."  Exhibit A.  Ms. Bellefeuille declined to sign the letter.  CEO Booth proceeded to advise Ms. Bellefeuille that she was not producing the way the company

5

needed her to produce. CEO Booth further advised Ms. Bellefeuille that the company intended to hire another salesperson and demote her to her former position of sales assistant. Ms. Bellefeuille replied that she had no interest in returning to a sales assistant position, telling CEO Booth that he could accept her notice or let her go. CEO Booth said no, that Ms. Bellefeuille could "keep doing what you're doing." "Maybe you'll turn it around, but I don't think so," CEO Booth said.

25. Mr. Nelson continued to loiter without justification around Ms. Bellefeuille's desk during the week of March 12, 2018.

26. The defendant's failure and refusal to remediate the sexual harassment, coupled with the defendant's threats to demote Ms. Bellefeuille and other retaliation, forced Ms. Bellefeuille from her employment effective March 19, 2018.

27. Ms. Bellefeuille timely filed a Charge of Discrimination with the New Hampshire Human Rights Commission and the United States Equal Employment Opportunity Commission (EEOC) on or about April 9, 2018. Exhibit B.

28. Ms. Bellefeuille received a Notice of Right to Sue from the EEOC on or about March 12, 2019. This Complaint is timely filed with the Court within 90 days of receipt of such Notice, as required. Exhibit C.

29. Ms. Hughes was also subjected to sexual harassment in the workplace. Ms. Hughes typically arrived at work around 7:20 a.m., while Ms. Bellefeuille did not arrive until approximately 8:00 a.m. In these early mornings before Ms. Bellefeuille arrived, Ms. Hughes was forced to listen to Sales Manager Booth and David Nelson engage in sexual dialogue regarding Ms. Bellefeuille and other women. As Ms. Hughes sat at her work station, she had no

choice but to hear the men say such things as, "I'd like to bend her over my desk," and "I bet she gives a mean blow job."

30. The defendant also directed sexual harassment at Ms. Hughes. The Sales Manager, Gregory Booth, repeatedly told Ms. Hughes that she looked "good for her age." Sales Manager Booth also repeatedly exhorted Ms. Hughes to get rid of her husband. "Why did you marry Don?" Sales Manager Booth would ask. "You need to leave that pussy Don!" Sales Manager Booth would exclaim. "There are better men out there!"

31. On another occasion in or around January or February of 2018, Sales Manager Booth and CEO Booth summoned Ms. Hughes into Sales Manager Booth's office. The men interrogated Ms. Hughes about how to make banana bread. Ms. Hughes became aware that the men were gaping at her breasts. She excused herself.

32. In addition, in Ms. Hughes' presence, a female employee, Amy White, rubbed her breasts on CEO Booth's back while both individuals made sexual noises. Ms. Hughes protested this activity, telling the CEO that his behavior made her uncomfortable and that it constituted sexual harassment. Ms. Hughes asked the CEO to stop. "What are you, jealous?" CEO Booth leered. "I don't want you!" Ms. Hughes exclaimed.

33. Ms. Hughes reported the sexual behavior of CEO Booth with Ms. White to HR Manager Arena. HR Manager Arena sighed, said "I know," and did nothing to remediate the behavior of the CEO.

34. The CEO and the co-employee only escalated their behavior in response to Ms. Hughes' protests. The CEO and Ms. White began approaching Ms. Hughes' workspace more closely to engage in their sexual behavior. The CEO did not stop his sexual conduct with Ms.

White until one day in or around December of 2017 when Ms. Hughes threatened to snap photos of their conduct with her camera phone and send the photos to CEO Booth's wife.

35. Following this incident, CEO Booth treated Ms. Hughes with increasing hostility, culminating in a March 14, 2019, incident, in which he behaved in a physically threatening manner towards her. On or about this date, approximately ten (10) minutes before Ms. Hughes was scheduled to leave for the day, CEO Booth approached Ms. Hughes and told her that he needed her to type a quote before she left for the day. Ms. Hughes as a receptionist was not experienced in typing quotes, given that this task was generally the responsibility of the sales staff. Ms. Hughes explained that typing quotes was not within her job responsibilities as a receptionist. "Whose goddamned job is it?" CEO Booth bellowed. "Sales," Ms. Hughes replied. CEO Booth then threw the paperwork at Ms. Bellefeuille, hitting her in the face. "Who do you think you are?" Ms. Hughes exclaimed in horror. CEO Booth stormed over to Ms. Hughes and punched his fist into his hand, several times in front of her face. "I'm the goddamn president!" CEO Booth yelled.

36. The defendant terminated Ms. Hughes on or about March 16, 2018.

37. Ms. Hughes timely filed a Charge of Discrimination with the New Hampshire Commission for Human Rights and the EEOC on or about April 9, 2018. Exhibit D.

38. Ms. Hughes received a Notice of Right to Sue from the EEOC on or about March 12, 2019. This Complaint is timely filed with the Court within 90 days of receipt of such Notice, as required. Exhibit E.

## COUNT I

### (Sexual Harassment in Violation of Title VII by Deborah Bellefeuille)

39. The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

40. Ms. Bellefeuille was subjected to sexual harassment in the workplace that was unwelcome, severe and pervasive. Sales Manager Booth sexually assaulted Ms. Bellefeuille, pushing his pelvis against her while rubbing her shoulders. Sales Manager Booth also made unwelcome and offensive sexual comments both to Ms. Bellefeuille and in her presence. Mr. Nelson made comments to Ms. Bellefeuille that were not only offensive but threatening.

41. Sales Manager Booth was empowered to take tangible employment actions against Ms. Bellefeuille by virtue of his management position.

42. Ms. Bellefeuille's co-worker, David Nelson, also subjected her to sexual harassment, doing such things as making unwelcome and offensive sexual comments both to Ms. Bellefeuille and in her presence. Mr. Nelson made comments to Ms. Bellefeuille that were not only offensive but threatening. Mr. Nelson also sexually harassed Ms. Bellefeuille by sending her sexually graphic e-mails and by loitering without any business purpose around her desk.

43. Ms. Bellefeuille reported Mr. Nelson's offensive conduct to management multiple times.

44. The defendant failed to take appropriate action to prevent or correct the harassment. Following Ms. Bellefeuille's report of Mr. Nelson's conduct to management in or around October or November of 2017, Mr. Nelson continued his harassing conduct and taunted Ms. Bellefeuille with comments such as "It's not harassment if they like it, right, Deb?" Mr. Nelson also continued to loiter around Ms. Bellefeuille's desk without business justification

9

following Ms. Bellefeuille's second complaint to management regarding his unwelcome and offensive sexual conduct.

45. The sexual harassment suffered by Ms. Bellefeuille culminated in a tangible employment action—her constructive discharge from her employment.

46. The defendant is strictly liable for the sexual harassment committed by Sales Manager Booth because he qualifies as a supervisor and because the sexual harassment resulted in a tangible employment action.

47. The defendant is liable for the sexual harassment committed by Sales Manager Booth and Mr. Nelson because the defendant knew about such harassment but failed to take reasonable measures to prevent or correct it.

48. As a direct and proximate result of the sexual harassment suffered by Ms. Bellefeuille, Ms. Bellefeuille has suffered and continues to suffer damages, including but not limited to lost wages, lost employment benefits, emotional distress, humiliation, inconvenience, and loss of enjoyment of life. Ms. Bellefeuille is further entitled to punitive damages based on the defendant's acts and omissions done with malice and with reckless disregard for her federally protected rights.

49. Ms. Bellefeuille is also entitled to attorney's fees, plus interest and costs.

## COUNT II

**(Sexual Harassment in Violation of RSA 354-A by Deborah Bellefeuille)**

50. The allegations of the preceding paragraphs are incorporated herein by reference.

51. Ms. Bellefeuille was subjected to sexual harassment in the workplace that was unwelcome, severe and pervasive. Sales Manager Booth sexually assaulted Ms. Bellefeuille, pushing his pelvis against her while rubbing her shoulders. Sales Manager Booth also made

unwelcome and offensive sexual comments both to Ms. Bellefeuille and in her presence. Mr. Nelson made comments to Ms. Bellefeuille that were not only offensive but threatening.

52. Sales Manager Booth was empowered to take tangible employment actions against Ms. Bellefeuille by virtue of his management position.

53. Ms. Bellefeuille's co-worker, David Nelson, also subjected her to sexual harassment, doing such things as making unwelcome and offensive sexual comments both to Ms. Bellefeuille and in her presence. Mr. Nelson made comments to Ms. Bellefeuille that were not only offensive but threatening. Mr. Nelson also sexually harassed Ms. Bellefeuille by sending her sexually graphic e-mails and by loitering without any business purpose around her desk.

54. Ms. Bellefeuille reported Mr. Nelson's offensive conduct to management multiple times.

55. The defendant failed to take appropriate action to prevent or correct the harassment. Following Ms. Bellefeuille's report of Mr. Nelson's conduct to management in or around October or November of 2017, Mr. Nelson continued his harassing conduct and taunted Ms. Bellefeuille with comments such as "It's not harassment if they like it, right, Deb?" Mr. Nelson also continued to loiter around Ms. Bellefeuille's desk without business justification following Ms. Bellefeuille's second complaint to management regarding his unwelcome and offensive sexual conduct.

56. The sexual harassment suffered by Ms. Bellefeuille culminated in a tangible employment action—her constructive discharge from her employment.

57. The defendant is strictly liable for the sexual harassment committed by Sales Manager Booth because he qualifies as a supervisor and because the sexual harassment resulted in a tangible employment action.

58. The defendant is liable for the sexual harassment committed by Sales Manager Booth and Mr. Nelson because the defendant knew about such harassment but failed to take reasonable measures to prevent or correct it.

59. As a direct and proximate result of the sexual harassment suffered by Ms. Bellefeuille, Ms. Bellefeuille has suffered and continues to suffer damages, including but not limited to lost wages, lost employment benefits, emotional distress, humiliation, inconvenience, and loss of enjoyment of life. Ms. Bellefeuille is further entitled to enhanced compensatory damages based on the defendant's acts and omissions done willfully and/or with reckless disregard for Ms. Bellefeuille's rights under RSA 354-A.

60. Ms. Bellefeuille is also entitled to attorney's fees, plus interest and costs.

## COUNT III

### (Retaliation in Violation of Title VII by Deborah Bellefeuille)

61. The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

62. Ms. Bellefeuille engaged in protected activity under Title VII, reporting to management that she was suffering sexual harassment in the workplace.

63. The defendant subjected Ms. Bellefeuille to adverse employment actions in retaliation against her for her protected activity, denying vacation requests that the defendant had previously represented it would approve, subjecting Ms. Bellefeuille to unwarranted criticisms of her job performance, and threatening to demote Ms. Bellefeuille.

64. As a direct and proximate result of the defendant's unlawful retaliation against Ms. Bellefeuille, Ms. Bellefeuille has suffered and continues to suffer damages, including but not limited to lost wages, lost employment benefits, emotional distress, humiliation, inconvenience,

and loss of enjoyment of life. Ms. Bellefeuille is further entitled to punitive damages based on the defendant's acts and omissions done with malice and with reckless disregard for her federally protected rights.

65. Ms. Bellefeuille is also entitled to attorney's fees, plus interest and costs.

## COUNT IV

### (Retaliation in Violation of RSA 354-A by Deborah Bellefeuille)

66. The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

67. Ms. Bellefeuille engaged in protected activity under RSA 354-A, reporting to management that she was suffering sexual harassment in the workplace.

68. The defendant subjected Ms. Bellefeuille to adverse employment actions in retaliation against her for her protected activity, denying vacation requests that the defendant had previously represented it would approve, subjecting Ms. Bellefeuille to unwarranted criticisms of her job performance, and threatening to demote Ms. Bellefeuille.

69. As a direct and proximate result of the defendant's unlawful retaliation against Ms. Bellefeuille, Ms. Bellefeuille has suffered and continues to suffer damages, including but not limited to lost wages, lost employment benefits, emotional distress, humiliation, inconvenience, and loss of enjoyment of life. Ms. Bellefeuille is further entitled to enhanced compensatory damages based on the defendant's acts and omissions done willfully and/or with reckless disregard for her rights under RSA 354-A.

70. Ms. Bellefeuille is also entitled to attorney's fees, plus interest and costs.

## COUNT V

### (Sexual Harassment in Violation of Title VII by Eileen Hughes)

71. The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

72. Sales Manager Booth subjected Ms. Hughes to sexual harassment, forcing her to listen to sexual banter between himself and Mr. Nelson in the early mornings, making offensive comments to her, and gaping at her breasts.

73. Mr. Nelson further sexually harassed Ms. Hughes, making unwelcome and offensive sexual comments in her presence.

74. CEO Booth also subjected Ms. Hughes to sexual harassment, gaping at her breasts, and engaging in sexual conduct with a female co-employee in front of Ms. Hughes.

75. Ms. Hughes objected to the conduct and also reported it to the defendant's Human Resources Manager, to no avail.

76. Sales Manager Booth qualified as Ms. Hughes' supervisor.

77. CEO Booth qualified as Ms. Hughes' supervisor.

78. The defendant is strictly liable for the sexual harassment suffered by Ms. Hughes because such harassment resulted in a tangible employment action, specifically Ms. Hughes' firing.

79. The defendant is liable for the sexual harassment that Ms. Hughes suffered because the defendant knew about such harassment but failed to take reasonable measures to prevent or correct it.

80. As a direct and proximate result of the sexual harassment suffered by Ms. Hughes, Ms. Hughes has suffered and continues to suffer damages, including but not limited to

lost wages, lost employment benefits, emotional distress, humiliation, inconvenience, and loss of enjoyment of life. Ms. Hughes is further entitled to punitive damages based on the defendant's acts and omissions done with malice and with reckless disregard for her federally protected rights.

81. Ms. Hughes is also entitled to attorney's fees, plus interest and costs.

## COUNT VI

**(Sexual Harassment in Violation of RSA 354-A by Eileen Hughes)**

82. The allegations of the preceding paragraphs are repeated and incorporated by reference.

83. Sales Manager Booth subjected Ms. Hughes to sexual harassment, forcing her to listen to sexual banter between himself and Mr. Nelson in the early mornings, making offensive comments to her and gaping at her breasts.

84. Mr. Nelson further sexually harassed Ms. Hughes, making unwelcome and offensive sexual comments in her presence.

85. CEO Booth also subjected Ms. Hughes to sexual harassment, gaping at her breasts, and engaging in sexual conduct with a female co-employee in front of Ms. Hughes.

86. Sales Manager Booth qualified as Ms. Hughes' supervisor.

87. CEO Booth qualified as Ms. Hughes' supervisor.

88. The defendant is strictly liable for the sexual harassment suffered by Ms. Hughes because such harassment resulted in a tangible employment action, specifically Ms. Hughes' firing.

89. The defendant is liable for the sexual harassment that Ms. Hughes suffered because the defendant knew about such harassment but failed to take reasonable measures to prevent or correct it.

90. As a direct and proximate result of the sexual harassment suffered by Ms. Hughes, Ms. Hughes has suffered and continues to suffer damages, including but not limited to lost wages, lost employment benefits, emotional distress, humiliation, inconvenience, and loss of enjoyment of life. Ms. Hughes is further entitled to enhanced compensatory damages based on the defendant's acts and omissions done willfully and/or with reckless disregard for her federally protected rights.

91. Ms. Hughes is also entitled to attorney's fees, plus interest and costs.

## COUNT VII

### (Retaliation in Violation of Title VII by Eileen Hughes)

92. The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

93. Ms. Hughes engaged in protected activity under Title VII, reporting to management that she was suffering sexual harassment in the workplace and directly objecting to the defendant's CEO that the harassment that he was perpetrating was intolerable.

94. The defendant subjected Ms. Hughes to adverse employment actions in retaliation against her for her protected activity. CEO Booth yelled at Ms. Hughes, physically threatened her by punching his fist in his palm in front of her face, and ultimately fired her.

95. As a direct and proximate result of the defendant's unlawful retaliation against Ms. Hughes, Ms. Hughes has suffered and continues to suffer damages, including but not limited to lost wages, lost employment benefits, emotional distress, humiliation, inconvenience, and loss

of enjoyment of life. Ms. Hughes is further entitled to punitive damages based on the defendant's acts and omissions done with malice and with reckless disregard for her federally protected rights.

96. Ms. Hughes is also entitled to attorney's fees, plus interest and costs.

## COUNT VIII

### (Retaliation in Violation of RSA 354-A)

97. The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

98. Ms. Hughes engaged in protected activity under RSA 354-A, reporting to management that she was suffering sexual harassment in the workplace and directly objecting to the defendant's CEO that the harassment that he was perpetrating was intolerable.

99. The defendant subjected Ms. Hughes to adverse employment actions in retaliation against her for her protected activity. CEO Booth yelled at Ms. Hughes, physically threatened her by punching his fist in his palm in front of her face, and ultimately fired her.

100. As a direct and proximate result of the defendant's unlawful retaliation against Ms. Hughes, Ms. Hughes has suffered and continues to suffer damages, including but not limited to lost wages, lost employment benefits, emotional distress, humiliation, inconvenience, and loss of enjoyment of life. Ms. Hughes is further entitled to punitive damages based on the defendant's acts and omissions done willfully and/or with reckless disregard for her rights under RSA 354-A.

101. Ms. Hughes is also entitled to attorney's fees, plus interest and costs.

WHEREFORE, the plaintiffs respectfully pray this Honorable Court:

A. Schedule this matter for trial by jury, and after trial;

B. Find the defendant liable to the plaintiff Bellefeuille for sexual harassment in violation of Title VII;

C. Find the defendant liable to the plaintiff Bellefeuille for sexual harassment in violation of RSA 354-A;

D. Find the defendant liable to the plaintiff Bellefeuille for retaliation in violation of Title VII;

E. Find the defendant liable to the plaintiff Bellefeuille for retaliation in violation of RSA 354-A;

F. Find the defendant liable to the plaintiff Hughes for sexual harassment in violation of Title VII;

G. Find the defendant liable to the plaintiff Hughes for sexual harassment in violation of RSA 354-A;

H. Find the defendant liable to the plaintiff Hughes for retaliation in violation of Title VII;

I. Find the defendant liable to the plaintiff Hughes for retaliation in violation of RSA 354-A;

J. Award the plaintiff Bellefeuille damages for economic losses including but not limited to lost wages and lost employment benefits;

K. Award the plaintiff Bellefeuille compensatory damages including but not limited to damages for emotional distress, humiliation, inconvenience and loss of enjoyment of life;

L. Award the plaintiff Bellefeuille punitive damages;

M. Award the plaintiff Bellefeuille enhanced compensatory damages;

N. Award the plaintiff Bellefeuille attorney's fees, plus interest and costs;

O.     Award the plaintiff Hughes damages for economic losses including but not limited to lost wages and lost employment benefits;

P.     Award the plaintiff Hughes compensatory damages including but not limited to damages for emotional distress, humiliation, inconvenience and loss of enjoyment of life;

Q.     Award the plaintiff Hughes punitive damages;

R.     Award the plaintiff Hughes enhanced compensatory damages;

S.     Award the plaintiff Hughes attorney's fees, plus interest and costs; and

T.     Grant such other and further relief as is just and equitable.

> Respectfully submitted,
> DEBORAH BELLEFEUILLE and
> EILEEN HUGHES
> By their attorneys,
> DOUGLAS, LEONARD & GARVEY, P.C.

Date: June 7, 2019     By:   /s/ Benjamin T. King
     Benjamin T. King, NH Bar #12888
     14 South Street, Suite 5
     Concord, NH 03301
     (603) 224-1988
     benjamin@nhlawoffice.com